IN THE UNITED STATES DISTRICT COURT
___FOR THE DISTRICT OF MARYLAND___

| | | |
|---|---|---|
| TERESA JAMES, Individually, and as | * | |
| Mother and Next Friend of | * | |
| DAMIEN JAMES, a Minor | * | |
| | * | |
| v. | * | Civil No. JFM-06-555 |
| | * | |
| FREDERICK COUNTY PUBLIC | * | |
| SCHOOLS, et al. | * | |
| | * | |
| | ***** | |

OPINION

This action arises out of a Frederick County police officer's arrest of an 8-year-old boy,

Damien James ("Damien"), at a public elementary school. Before me now is a motion to dismiss

or for summary judgment filed by the Frederick County Board of Education ("Board") and a

motion to dismiss filed by the Frederick Police Department ("FPD"). For the reasons that follow,

the Board's motion will be granted and the FPD's motion will be granted in part and denied in

part.

I.

Damien suffers from Attention Deficit Hyperactivity Disorder and Oppositional Defiant

Disorder. (Compl. ¶ 46).[1] He began his education at Bel-Pre Elementary in Montgomery County,

where the staff prepared an Individualized Education Program ("IEP"), *see* 20 U.S.C. § 1414(d),

that concluded he needed to be placed in a special-education environment requiring, *inter alia*, a

customized curriculum, small classroom environment, and the presence of multiple adults.

_____

[1]My statement of the facts is based entirely upon the allegations made in the complaint.

(Compl. ¶¶ 19-20). In September 2001, Damien transferred to Whittier Elementary in Frederick County. There a new IEP was prepared that called for him to enter a "mainstream" academic environment *i.e.*, a regular classroom, with supporting special education services. (*Id.* ¶¶ 7, 22; Board Br. at 2). Though Damien struggled and had frequent behavioral problems, (Compl. ¶¶ 23, 26), he remained in the regular classroom for the entirety of the 2001-2002 school year, and returned to it for the 2002-2003 year, (Board Br. at 2).

At some point during the school day of March 4, 2003, Damien, then 8 years old, became severely upset. (Compl. ¶ 8). He did not attempt to harm himself or any others in the classroom. (*Id.*). When his teachers were unable to calm him down, William Burton, III ("Officer Burton"), a Frederick County police officer who regularly patrolled the school grounds, was called to the scene. (*Id.* ¶¶ 9-10). Upon Officer Burton's entry into the classroom, Damien's outburst ceased. (*Id.* ¶ 11). Regardless, Officer Burton handcuffed Damien and proceeded to march him through the school and place him in a squad car. (*Id.*). Damien was then driven to the police station and formally charged with disrupting school activities. (*Id.*).

As a result of this incident, Damien suffered, and will continue to suffer, emotional trauma requiring professional medical treatment. (*Id.* ¶ 57). The federal government, including the military, has paid for portions of this treatment. (*See id.* ¶ 60).

## II.

Damien's mother, Teresa James ("James"), filed this action on March 3, 2006, naming the following as defendants: Frederick County Public Schools ("FCPS"), the FPD, and Officer John Burton. The complaint contains nine counts, and in each James is only seeking monetary relief. Three of the counts relate to Damien's placement in the regular classroom and are brought

against FCPS: violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

§ 1400 *et seq*., (Compl. ¶¶ 12-16); academic negligence, (*id*. ¶¶ 17-26); and negligent hiring of

incompetent staff, (*id*. ¶¶ 52-55). Four of the counts pertain to Damien's arrest: excessive force

in violation of 42 U.S.C. § 1983, brought against Officer Burton, (*id*. ¶¶ 27-31), and FCPS and

the FPD, (*id*. ¶¶ 32-39); false imprisonment, brought against all defendants, (*id*. ¶¶ 40-44); and

intentional infliction of emotional distress, brought against FCPS only, (*id*. ¶¶ 45-51). The eighth

count, brought against all defendants, seeks indemnification for the money James has spent, and

will continue to spend, for the medical treatment Damien received as a result of his arrest. (*Id*. ¶¶

56-58). The final count, citing 42 U.S.C. §§ 2651 *et seq*., Family Medical Care Recovery Act

("Recovery Act"), and 10 U.S.C. § 1095, asserts that James has received the express consent of

the United States to sue all of the defendants on its behalf for the cost of Damien's past and

future medical treatment that has or will be paid for by the federal government.[2] (Compl. ¶¶ 59-

61).

     In response, the Board filed a motion to dismiss or for summary judgment, while the FPD

filed a motion to dismiss. I will address each in turn, but before doing so I must address two

---

[2] The Recovery Act "grants to the government a right to recover from a third-party tortfeasor the reasonable value of medical services that the government has furnished . . . ." *Holbrook v. Andersen Corp.*, 996 F.2d 1339, 1340 (1st Cir. 1993). Title 10 § 1095 "is an analogous statute which entitles [the Department of Defense] to recover from third-party insurers the reasonable costs of medical services rendered by the military to its personnel." *United States v. Capital Blue Cross*, 992 F.2d 1270, 1276 (3d Cir. 1993). Courts have held that, with the government's permission, a plaintiff may bring a claim under the Recovery Act on the government's behalf. *See e.g.*, *McCotter v. Smithfield Packing Co.*, 868 F. Supp. 160 (E.D. Va. 1994); *Conley v. Maattala*, 303 F. Supp. 484 (D.N.H. 1969). I am not aware of any cases that have reached a similar conclusion with respect to 10 U.S.C. § 1095. However, because neither of the defendants raises the issue, I will assume for the purposes of this opinion that James may proceed with the claim.

predicate issues common to both motions: whether James has sued the right defendants, and whether she has stated a claim for excessive force against Officer Burton.

A.

All parties agree that none of the named defendants are amenable to suit. Neither FCPS nor the FPD exist as separate legal entities, and there was no FPD officer at the time of the incident named John Burton. Instead of FCPS, James should have named the Board. *Adams v. Calvert County Pub. Schs.*, 201 F. Supp. 2d 516, 520 n.3 (D. Md. 2002) ("The school district, however, does not exist as a separate entity for purposes of suit. The Maryland Education Code states that 'there is a county board of education for each county school system.' Md. Code Ann., Educ. § 3-103 and that '[a] county board: . . . (2) May sue and be sued." Md. Code Ann., Educ. § 3-104(b)."). In place of the FPD, she should have named its parent municipal corporation, the City of Frederick. *Strebeck v. Balt. County Police Dep't*, 2005 U.S. Dist. LEXIS 26570, at *2 (D. Md. Oct. 17, 2005) ("Neither the Baltimore County Police Department nor the Baltimore County Council are *sui juris*. The Police Department is simply an agency of Baltimore County, and the County Council is its legislative branch of government."). As for Officer Burton, it was not until after she filed suit that James learned that his first name is William, not John, and that he is now deceased. *See id*. at *3 n.2 ("It is perhaps worthy of note that during the three years after the incident, plaintiff made no effort to ascertain the identity of the unnamed officers by making a request under the Maryland Public Information Act, Md. Code Ann., State Gov't §§ 16-611 *et seq*.").

Both the Board[3] and the FPD urge me to dismiss all claims on this basis. I decline to do so because it would be a waste of time and resources to go through another round of briefing on their substantive arguments. Instead, I will proceed to analyze the issues as if the proper parties had been sued, and ask that James file a motion for leave to amend her complaint to remedy the problem as to the City of Frederick (the only defendant remaining in light of my ruling in this opinion). Because James filed her complaint one day before the three-year statute of limitations was set to expire, in briefing this motion the parties will need to pay attention to Fed.R.Civ.P. 15(c).

B.

James has brought a *Monell* claim against both the Board and the FPD, which can only succeed if James can first establish that Officer Burton used excessive force in arresting Damien. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). The Board  argues that James cannot prevail on this necessary predicate because it is clear  that Officer Burton's actions were proper. While that contention may prove meritorious after a factual record has been established during discovery, the allegations in the complaint are sufficient to state a claim that Officer Burton used excessive force.[4] According to the complaint,

---

[3] Even though it is not named in the complaint, the Board, not FCPS, filed the motion to dismiss or for summary judgment.

[4] The Board appended to its initial memorandum two summaries of the day's events that were placed in Damien's academic file and which contradict in certain respects the account contained in the complaint. The Board characterizes these summaries as "business records," and thus argues that I am free to consider their contents in resolving this motion. *See* Fed. R. Evid. 803(6). I need not decide that issue because, as stated *infra*, even assuming that Officer Burton used

Damien did not harm himself or anyone else on the morning of March 4, 2003, and he calmed

down when Officer Burton entered the classroom, (Compl. ¶¶ 8, 11). These allegations are

sufficient to survive a motion to dismiss. *Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994) (stating

that "section 1983 claims are not subject to a 'heightened pleading standard' paralleling the

rigors of proof demanded on the merits") (citing *Leatherman v. Tarrant County Narcotics*

*Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)).

### III. Claims Against the Board

#### A.

All three claims related to the decision by the Whittier staff to place Damien in a regular

classroom must fail as a matter of law. With respect to the negligence and negligent hiring

claims, the Maryland Court of Appeals more than two decades ago held that it would not

recognize such claims primarily because of the difficulty in fashioning a legal standard of care

and the immeasurability of damages, but also because it did not want to make courts the

"overseers of both the day-to-day operation of our educational process as well as the formulation

of its governing policies." *Hunter v. Bd. of Educ. of Montgomery County*, 439 A.2d 582, 585

(Md. 1982); *see also Tabor v. Baltimore City Public Sch.*, 773 A.2d 628, 630 (Md. Ct. Spec.

App. 2001) ("Maryland does not recognize a tort action seeking damages based on negligent

education.") (citing *Hunter*).

As for the IDEA claim, James failed to exhaust her administrative remedies before filing

this action, which the Act requires. 20 U.S.C. § 1415(i). Indeed, she never made any attempt

---

excessive force against Damien, James has not stated a cognizable claim against the Board.

even to *initiate* an administrative review of the actions taken by Whittier beginning in September

2001, despite her assertion that Damien "struggled significantly" at the school. (Compl. ¶ 23).

Citing *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089 (1st Cir. 1989), James asserts

that exhaustion would have been "futile" because she transferred Damien out of Whittier at the

end of the 2002-2003 school year and enrolled him in Lewistown Elementary School,[5] and thus

what is at issue is not the adequacy of the Whittier IEP, but only whether she is entitled to a

compensatory education award for the costs associated with sending Damien to Lewistown.[6]

There are two flaws with this argument.

First, whether James is entitled to a compensatory education award *necessarily* hinges on

an assessment of the adequacy of the Whittier IEP. And the need for this assessment is the very

reason exhaustion is a prerequisite to filing a civil action:

> The IDEA's administrative machinery places those with specialized knowledge -- education
> professionals -- at the center of the decisionmaking process, entrusting to them the initial evaluation
> of whether a disabled student is receiving a free, appropriate public education. These administrative
> procedures also ensure that educational agencies will have an opportunity to correct shortcomings
> in a disabled student's individualized education program (IEP). This too makes sense because the
> problems attendant to the evaluation and education of those with special needs are highly ramified
> and demand the best available expertise.
> The reliance of courts upon the detailed evidentiary record developed during the due process
> hearing further underscores the importance of the IDEA's administrative procedures. The statutory
> requirement that the reviewing court shall receive the records of the administrative proceedings

---

[5] Lewistown is also a public school in Frederick County. It is "home to the countywide Special Education and
Treatment (SET) Program. SET, which operates as a school-within-a-school, is for elementary-age students in
grades 1-5 with emotional and behavioral needs. The program assists students with coping techniques, anger
management and other skills needed for school success." Profile of Lewistown Elementary School,
http://www.fcps.org/cms/sp/getschool.cfm?RecordID=15.

[6] In her complaint, James requested compensatory damages for the emotional injuries Damien suffered. (Compl. ¶
16). It was not until the Board pointed out in its initial memorandum the Fourth Circuit's holding in *Sellers v. Sch.
Bd. of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998), that "tort-like damages are simply inconsistent with IDEA's
statutory scheme," that James asserted that she was seeking compensation for the costs of enrolling Damien in
Lewistown, which the First Circuit held to be a form of equitable relief available under the Act in *Town of
Burlington v. Depar't of Educ.*, 736 F.2d 773 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985).

> means that the court must give due weight to those proceedings. Put another way, the provision of judicial review is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. . . . Allowing plaintiffs to bypass the IDEA's administrative process en route to state or federal court disrupts this carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary. That phenomenon is directly at odds with the method of the IDEA: to allow parents to come directly to federal courts will render the entire scheme of the IDEA nugatory.

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 60-61 (1st Cir. 2002) (internal quotations, citations, and alterations omitted).

Second, the First Circuit made clear in *Christopher W.* that exhaustion is only "futile" when school officials have somehow interfered with a parent's access to administrative review. 877 F.2d at 1096-97. It discussed as an example a case in which a school administrator had forged certain forms in order to block a parent's attempt at obtaining an evaluation of her child. *Id*. at 1096 (discussing *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141 (2d Cir. 1983)). Here there is no evidence that the Board or its employees did anything to prevent James from administratively challenging the IEP. Accordingly, the IDEA claim is dismissed.

### B.

The arrest-related claims against the Board must also be dismissed. In her section 1983 claim, James seeks only monetary damages. (Compl. ¶ 39). But "[t]his court has made clear, consistently and repeatedly, that the county boards of education of Maryland are state agencies and therefore immune under the Eleventh Amendment from suit for monetary damages." *McNulty v. Bd. of Educ.*, 2004 U.S. Dist. LEXIS 12680, at *13-14 (D. Md. July 8, 2004) (citations omitted).[7] James's false imprisonment and intentional infliction of emotional distress

---

[7] Indeed, the court previously has held that the Board *specifically* is protected by sovereign immunity from such suits. *Jones v. Frederick County Bd. of Educ.*, 689 F. Supp. 535, 538 (D. Md. 1988).

claims are further flawed in that a school board cannot be held liable for intentional torts[8] under a theory of *respondeat superior* because such torts "can never be considered to have been done in the furtherance of the beneficent purposes of the educational system. Since such alleged intentional torts constitute an abandonment of employment, the Board is absolved of liability for these purported acts of its individual employees." *Hunter*, 439 A.2d at 587 n.8.[9]

C.

To succeed on the indemnification claim and the subrogation claims under the Recovery Act and 10 U.S.C. § 1095, James would first have to recover against the Board in a tort action. Because she cannot do so, those claims are also dismissed.

IV. Claims Against the City

A.

The two arrest-related claims James has brought against the City are that it is vicariously liable for the alleged false imprisonment of Damien, and that its police department had an unconstitutional policy of allowing its officers to use excessive force against minors. The first of these claims fails as a matter of law because a Maryland municipality is "generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts. The operation of a police force is a governmental function. Thus, [a municipality] is immune as to

[8] False imprisonment is an intentional tort. *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000) ("Although the intentional torts of false arrest and false imprisonment are separate causes of action, they share the same elements.") (citing *Scott v. Jenkins*, 690 A.2d 1000, 1003 (Md. 1997) and *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995)).

[9] In light of my ruling that the Board has Eleventh Amendment immunity, I need not decide its further contention that it cannot be held liable for Officer Burton's actions in light of the fact that, although he allegedly was a regular presence at the Whittier school, he was an employee of the police department.

common law tort claims asserted against it based on torts committed by its police officers."

*Williams v. Prince George's County*, 157 F. Supp. 2d 596, 603-04 (D. Md. 2001) (internal

quotations and citations omitted); *see also Strebeck*, 2005 U.S. Dist. LEXIS 26570, at *2-3

("Although plaintiff seeks to hold the County liable under the Local Government Tort Claims

Act, Md. Code Ann., Cts. & Jud. Proc. Sec. 5-301 *et seq.*, he misreads the Act. It does not

impose direct liability upon a local government but merely provides that 'a local government

shall be liable for any judgment against its employee for damages resulting from tortious acts or

omissions committed by the employee within the scope of employment with the local

government.' Section 5-303(b)(1).").

James has, however, stated a valid *Monell* claim. Although the caption for the claim

includes the term *respondeat superior*, it is clear from her allegations that she is not simply

relying on the employer-employee relationship as a basis for section 1983 liability. *Williams*,

157 F. Supp. 2d at 601 ("There is no *respondeat superior* liability under § 1983, *i.e.*, the County

cannot be held liable under the statute simply because there exists an employer-employee

relationship between it and the officers who allegedly caused Plaintiff's injuries.") (italics added)

(citing *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 692 (1978)).

Specifically, she alleges that the FPD "knew or should have known, prior to March 4, 2003, that

their officers and/or agents were engaging in the unconstitutional conduct of implementing

excessive force, handcuffing and arresting children as young as eight years of age. Despite this

knowledge, [the FPD] chose to deliberately ignore such behavior . . . thereby allowing a pattern

and/or practice of" unconstitutional actions to develop. (Compl. ¶ 36). Contrary to the FPD's

assertion, that she has not also alleged facts about other specific incidents of excessive force

against children is not fatal at the motion to dismiss stage. The Fourth Circuit has made clear that a *Monell* plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan*, 15 F.3d at 339-40 (citations omitted).

As stated above, however, the viability of James's *Monell* claim depends upon whether Officer Burton used excessive force.  Therefore, as a matter of efficient case management, discovery will be bifurcated and proceed in the first instance only as to that question. *See Jones v. Ziegler*, 894 F. Supp. 880, 883 (D. Md. 1995).

B.

Because James may proceed with the *Monell* claim, the indemnification and subrogation claims also survive the motion to dismiss.


A separate order implementing the rulings made in this Opinion is being entered herewith.


Date: August 1, 2006                          /s/_____
                                              J. Frederick Motz
                                              United States District Judge